# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re: | |
| **Todd Clifton Baldwin and** | **Bankruptcy Case** |
| **Julie Beckstein Baldwin,** | **No. 12-40060-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Daniel C. Green, RACINE OLSON NYE BUDGE & BAILEY, Chtd.,
Pocatello, Idaho, Attorney for Gary L. Rainsdon, Chapter 7 Trustee.

John O. Avery, Idaho Falls, Idaho, Attorney for Debtors.

### *Introduction*

Resolution of the issues presented in this case represents another

installment in the Court's consideration of the treatment of annuities in

Idaho bankruptcy cases.

MEMORANDUM OF DECISION – 1

Chapter 7[1] trustee Gary L. Rainsdon ("Trustee") objected to an

exemption claimed by Debtors Todd and Julie Baldwin ("Debtors") in a

structured settlement annuity.  Dkt. No. 54.  The parties filed briefs

addressing the issues, and the Court conducted an evidentiary hearing on

the objection on September 11, 2012.  Dkt. Nos. 58, 66, 85.  Having

considered the parties' submissions, the testimony and evidence, and

applicable law, this Memorandum sets forth the Court's findings and

conclusions, and disposes of the motion.  Fed. R. Bankr. P. 7052; 9014.

*Facts*

Debtor Julie Baldwin was formerly married to Randall Johnson.

During the marriage, on December 30, 1989, Mr. Johnson was seriously

injured in an automobile accident; he was thereafter unable to work.  The

couple filed a personal injury suit against the parties responsible for the

accident, which was eventually settled.  A portion of the settlement

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule"
references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

proceeds were used to acquire an annuity for Julie's[2] benefit.  The Release

and Settlement Agreement provided in pertinent part that:

> TO OR FOR THE BENEFIT OF JULIE JOHNSON:
>
> Beginning 03/15/1994 – $1,500/month for the life
> of Julie Johnson with 20 years guaranteed,
> compounding annually at 3%. The last
> guaranteed payment will be made 02/15/2014.
> Compounding benefits begin 03/15/1995.

Exh. 200.

Julie and Mr. Johnson divorced, and she subsequently married Todd

Baldwin.  When Debtors experienced financial problems, on August 27,

2011, Julie sold her right to receive the remaining guaranteed payments

from the annuity via a Purchase and Sale Agreement ("Sale Agreement")

to Settlement Capital Corporation for $57,572 in cash.  Exh. 201.  To

effectuate the sale, Julie was required to seek state court approval of the

terms of the Sale Agreement, and in that process, she submitted an

affidavit to the court.  Exhs. 202; 203.  It provides, as relevant here, that:

> I believe the transfer of my right to receive the

---

[2] The Court uses first names solely for clarity.  No disrespect is intended.

MEMORANDUM OF DECISION – 3

> Assigned Payments is in my best interest taking
> into account the welfare and support of my
> dependents.  I do not believe that approval of this
> transfer will negatively affect the standard of
> living for me or my family, make it difficult for
> me to pay living expenses, or otherwise harm me
> or my family in any way.  The payments in
> question are my property and being able to
> complete this transaction will be beneficial to me
> and my family.

Exh. 203 at ¶ 4.  The state court approved the annuity payment sale, and

Debtors received the sale proceeds, spending the bulk of those funds

within two months.  Unfortunately, no proceeds were used to pay

delinquent mortgage payments, and only a modest sum went toward car

loan payments, two of Debtors' most pressing obligations.  *See* Exh. 204.

Of course, the Sale Agreement dealt with only the guaranteed

portion of the annuity payments to be paid to Julie.  The non-guaranteed

payments, to be made for the term of Julie's life, will commence on March

15, 2014.  At that time, Julie will be entitled to receive approximately

$2,709 per month.  However, this sum increases three percent per annum.

It is Julie's right to receive these prospective payments that Debtors have

MEMORANDUM OF DECISION – 4

claimed as exempt.  Dkt. Nos. 200; 201, Exh. A.  Trustee objected to the

claimed exemption, Dkt. No. 54, and Debtors responded to his objection,

Dkt. No. 58.

*Analysis and Disposition*

## I.  General Exemption Law

When a petition for bankruptcy is filed, "all legal or equitable

interests of the debtor in property" become the property of the bankruptcy

estate and available for distribution to creditors.  § 541(a)(1).  However,

§ 522(b)(1) allows individual debtors to exempt property from the

bankruptcy estate, and to thereby shield it from administration by a

chapter 7 trustee.  Because Idaho has "opted out" of the Code's exemption

scheme, debtors in this state may claim only those exemptions allowable

under Idaho law, as well as those listed in § 522(b)(3).  Idaho Code § 11-

609; § 522(b)(3).

As the objecting party, Trustee bears the burden of proving that

Debtors' claim of exemption is not proper.  Rule 4003(c); *Carter v. Anderson*

*(In re Carter),* 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); *In re Cerchione,* 398 B.R.

MEMORANDUM OF DECISION – 5

699, 703 (Bankr. D. Idaho 2009).  Upon introduction of sufficient evidence

to rebut the prima facie validity of the exemption, the burden shifts to

Debtors to demonstrate that the claimed exemption is proper.  *In re*

*Lawrence*, 03.3 IBCR 165, 166 (Bankr. D. Idaho 2003) (citing *In re Nielsen*,

97.4 IBCR 107, 107 (Bankr. D. Idaho 1997)).  The exemption statutes are to

be liberally construed in favor of the debtor.  *In re Cerchione*, 398 B.R. at

703; *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005) (citing *In re*

*Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001)).

## II.  Idaho Exemption Law

As noted above, Idaho has opted out of the federal bankruptcy

statutory exemption scheme.  Therefore, Idahoans must claim exemptions

from those available under state law.  Here, Debtors originally claimed as

exempt Julie's right to receive prospective annuity payments under Idaho

Code §§ 11-604(1)(c), 41-1834, and 41-1836(1)(b).  Debtors later conceded

that Idaho Code § 41-1834 is inapplicable to this annuity, Dkt. No. 58, thus

the Court need only consider Debtors' exemption rights under the other

two statutes.

MEMORANDUM OF DECISION – 6

**A.  Idaho Code § 11-604(1)(c)**

Debtors first assert that the prospective annuity payments are

exempt under Idaho Code § 11-604(1)(c).  That statute provides:

> An individual is entitled to exemption of the
> following property to the extent reasonably
> necessary for the support of him and his
> dependents:
> * * * * *
> > (c) proceeds of insurance, a judgment, or a
> > settlement, or other rights accruing as a
> > result of bodily injury of the individual or
> > of the wrongful death or bodily injury of
> > another individual of whom the individual
> > was or is a dependent[.]

Idaho Code § 11-604(1)(c).

As can be seen, to successfully invoke this exemption, the plain

language of the statute requires a debtor to show that the funds in

question:  1) are proceeds of insurance, a judgment, a settlement, or other

rights; 2) which accrued as a result of bodily injury to the debtor, or the

wrongful death of, or bodily injury to, another individual as to whom the

debtor was or is a dependent; and 3) are reasonably necessary for the

support of the debtor and his/her dependents.

MEMORANDUM OF DECISION – 7

Here, there is no question that Julie's ex-spouse suffered a bodily injury, and that the funds to be paid to Julie under the annuity are proceeds from the settlement of the claim resulting from that injury. Even so, Trustee takes issue with whether the other elements for a valid exemption are met.

Trustee contends that Julie may not claim an exemption under Idaho Code § 11-604(1)(c) as the *former* spouse of the injured party. Trustee notes that the Legislature extends the exemption to the injured individual, and to that person's "dependents" in § 11-604(1)(c). For support, Trustee points out that the subsection immediately following the one at issue exempts insurance proceeds or benefits paid or payable following the death of an insured, if the debtor "was the spouse or a dependent" of the insured. Idaho Code § 11-604(d). Trustee therefore contends that, when it intends to do so, the Idaho Legislature knows how to extend protection of an exemption statute to *both* spouses and dependents, and that it did not expressly do so in § 11-604(1)(c) is significant. Therefore, Trustee concludes, § 11-604(1)(c) should not be read to provide an exemption for

MEMORANDUM OF DECISION – 8

the spouse of the injured person.

Of course, Trustee is correct that the Court may look to other portions of the same exemption statute to aid in interpretation of the provisions of the statute.  *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 616-17 (9th Cir. 2010) ("While the starting point is always the language of the statute itself . . . [r]ather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine . . . [legislative] intent.") (quoting *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009); *Pioneer Irr. Dist. v. City of Caldwell*, ___ P.3d ___, 2012 WL 1449597 *6 (Idaho Apr. 27, 2012) ("Statutes are construed under the assumption that the legislature was aware of all other statutes and legal precedence at the time the statute was passed.") (quoting *Druffel v. State, Dep't of Transp.*, 41 P.3d 739, 742 (Idaho 2002)).  But that the Court can do so is not the sole measure of whether Trustee's argument is correct.  In this case, the Court disagrees with Trustee that the specific reference to "spouse" in subparagraph (d) controls the manner in which § 11-604(1)(c) should be construed.

MEMORANDUM OF DECISION – 9

While Trustee's argument is fairly persuasive, a plain reading of

§ 11-604(1)(c) reveals the statute is not so limited. "The cardinal rule of

statutory construction [is] the plain meaning of a statute controls, except in

rare cases where a literal interpretation produces absurd results." *In re*

*Lopez*, 05.3 IBCR 80, 82 (Bankr. D. Idaho 2005) (citing *In re Proalert, LLC*, 314

B.R. 436, 441 (9th Cir. BAP 2004)). The Court has examined the cases

interpreting this statute, as well as cases from outside of Idaho construing

similar statutes, and can find no precedent for the interpretation Trustee

suggests. Instead, according to the plain meaning of § 11-604(1)(c), if a

debtor shows he or she is or was[3] a dependent of the injured person,

assuming the other statutory requirements are met, that debtor is not

disqualified from claiming the exemption solely because the debtor was

the spouse of the injured person.

---

[3] It could be argued that, through use of the past tense in the phrase "was
or is," the Legislature intended solely to refer to situations where the injured
person has died, rather than to exemptions claimed by the injured party's
divorced spouse. On the other hand, the statutory language and punctuation
does not link the past-tense "was" with "wrongful death," so the Court declines
to read any such limitation into the statute.

MEMORANDUM OF DECISION – 10

But while Julie is not prevented from claiming a § 11-604(1)(c)

exemption simply because she was Mr. Johnson's spouse, since the statute

does not expressly apply to both "spouse and dependent," Julie must still

show she was a dependent of Mr. Johnson to exempt the annuity

payments.

The exemption statute defines "dependent" as "an individual who

derives support primarily from another individual."  Idaho Code § 11-

601(2).  Applying this definition, the Court concludes that Julie has not

made the requisite showing.  The information submitted in evidence

concerning whether Julie was ever a dependent of her former husband is

sparse.  That evidence indicates only that, at the time of Mr. Johnson's

accident, Julie worked as a waitress, and her former husband was

attending school and about to join the military.  Indeed, it is likely, or at

least as possible as not, that Julie was the sole family provider at that time.

Moreover, Debtors provided no evidence that Julie was in any way

dependent upon her ex-husband on bankruptcy petition day.

Accordingly, because Julie did not show that she was or is a dependent of

MEMORANDUM OF DECISION – 11

her ex-spouse, she may not exempt the settlement proceeds under Idaho

Code § 11-604(1)(c).

**B.  Idaho Code § 41-1836**

Debtors also claim the annuity containing the personal injury

settlement proceeds is exempt pursuant to Idaho Code § 41-1836, which

applies to:

> The benefits, rights, privileges and options which
> under any annuity contract heretofore or
> hereafter issued are due or prospectively due the
> annuitant, shall not be subject to execution nor
> shall the annuitant be compelled to exercise any
> such rights, powers, or options, nor shall
> creditors be allowed to interfere with or terminate
> the contract, except:
> * * * * *
> (b) The total exemption of benefits
> presently due and payable to any annuitant
> periodically or at stated times under all
> annuity contracts under which he is an
> annuitant, shall not at any time exceed one
> thousand two hundred fifty dollars ($1,250)
> per month for the length of time
> represented by such installments, and that
> such periodic payments in excess of one
> thousand two hundred fifty dollars ($1,250)
> per month shall be subject to garnishee
> execution to the same extent as are wages

MEMORANDUM OF DECISION – 12

and salaries.

Idaho Code § 41-1836(1)(b).

Trustee contends that Julie's right to receive annuity payments is not protected under Idaho Code § 41-1836. He contends that because Title 41 is Idaho's insurance code, and since the annuity here is not a contract of insurance, but rather a contract for a litigant to fund personal injury settlement payments, the statute is inapplicable here. The Court disagrees.

The Court has already rejected Trustee's argument, albeit in a slightly different context. *See In re Wilcox*, 08.1 IBCR 13, 14 (Bankr. D. Idaho 2008). In that case, the Court considered whether a "personal injury annuity" was exempt under Idaho Code § 41-1836 in response to a trustee's argument that the statute applied only to insurance annuities. The Court rebuffed the trustee's contention, stating that although "the annuity exemption provision of Idaho Code § 41-1836 is found within the Idaho insurance code, the language is not so limiting." *Id*. The Court noted that the statute provides a description of what type of contract constitutes an annuity within its meaning, and that nowhere in that

MEMORANDUM OF DECISION – 13

description was there a requirement that the contract be "insurance-based." *Id.* at 14-15 (quoting Idaho Code § 41-1836(3)).  Instead, the statute applies to "any annuity contract;" in it, the Legislature makes no effort to distinguish between the varieties of annuity contracts, such as those intended for retirement investments, or those established in life insurance contracts, from those purchased to pay tort settlements.  *Id.*

Because it meets the definition of an annuity in the exemption statute, *see* Idaho Code § 41-1836(3), and Trustee raises no other arguments, the Court concludes Debtors may exempt Julie's right to prospective annuity payments.

### 1. Debtors' Right to Exempt "Excess" Benefits.

It is undisputed that when the annuity payments to Julie commence in March 2014, they will be approximately $2,700 per month.  The amount of the payments will increase annually.  As noted above, Idaho Code § 41-1836(b) protects the debtor's right to receive annuity payments up to $1,250 per month.  Here, though, Debtors assert they should be able to exempt an amount in excess of the statutory cap.  In their schedule C,

MEMORANDUM OF DECISION – 14

Debtors claimed an exemption in the annuity payments in the amount of

$2,500 per month. However, at the hearing, Debtors' counsel requested

that they be entitled to exempt payments in the amount of $2,000 per

month.

The statute addresses the requirements for exempting amounts

above the $1,250 cap:

> If the total benefits presently due and payable to
> any annuitant under all annuity contracts under
> which he is an annuitant, shall at any time exceed
> payment at the rate of one thousand two hundred
> fifty dollars ($1,250) per month, then the court
> may order such annuitant to pay to a judgment
> creditor or apply on the judgment, in
> installments, such portion of such excess benefits
> as to the court may appear just and proper, after
> due regard for the reasonable requirements of the
> judgment debtor and his family, if dependent
> upon him, as well as any payments required to be
> made by the annuitant to other creditors under
> prior court orders.

Idaho Code § 41-1836(1)(c).

In general, the validity of the claimed exemption is determined as of

the date of filing of the bankruptcy petition. § 522(b)(3)(A); *Culver, L.L.C.*

MEMORANDUM OF DECISION – 15

*v. Chiu (In re Chiu),* 266 B.R. 743, 751 (9th Cir. BAP 2001); *Thorp v. Gugino*

*(In re Thorp)*, 09.3 IBCR 90, 91 (D. Idaho 2009).  In this case, however,

because Julie's annuity payments will not commence until March 2014, the

Court must look forward from the bankruptcy petition date, because

Idaho Code § 41-1836 allows an exemption for annuity payments that are

"due or prospectively due" to the annuitant.  This task is a challenge

because the Idaho Legislature did not indicate in the statute at what point

in time the debtor's need for any excess benefits should be measured.

The Court concludes that the petition date must be the starting point

for analysis of Debtor's financial needs, and therefore, their right to

exempt the "excess" payments in this case.  To reach this conclusion, the

Court relies, in part, on its analysis of similar situations arising under

Idaho Code § 11-604, a statute that allows an exemption of "property to the

extent reasonably necessary for the support of him and his dependents."[4]

---

[4]  Admittedly, § 41-1836(1)(c) instructs the Court to consider "the
reasonable requirements of the judgment debtor and his family."  There are no
other exemption statutes employing that language to which the Court can refer.
To discern the intent of the Legislature in construing this phrase, the Court feels
comfortable consulting other exemption statutes of similar import, and in

MEMORANDUM OF DECISION – 16

The statute clarifies that the subject phrase refers to the property required

"to meet the present *and anticipated* needs of the individual and his

dependents."  Idaho Code § 11-604(2) (emphasis supplied).  In considering

the point in time at which the Court should measure a debtor's reasonable

need in light of the forward-looking nature of the statute, this Court has

held that the bankruptcy petition date is the date on which a debtor's

exemptions are determined:

> The Court concludes that it should read Idaho
> Code § 11-604(2) in conjunction with the
> bankruptcy case law such that "present and
> anticipated needs" refers to those existing as of
> the petition date.  To decide otherwise would
> create a constantly moving target.  As the
> Bankruptcy Appellate Panel has observed, taking
> into account post-petition events to determine
> exemptions "would wreak havoc with the
> uniformity of bankruptcy law and procedure, and
> would permit an unending opportunity for
> creditors and debtors to examine and contest
> post-petition actions of a Chapter 7 debtor."  *In re
> Kim*, 257 B.R. 680, 688 (9th Cir. BAP 2000).

---

particular, concludes that the statutory language of § 11-604 is sufficiently similar
to guide the Court.

MEMORANDUM OF DECISION – 17

*In re Lopez*, 05.3 IBCR at 82.[5]  The Court is persuaded that this same

reasoning should apply to decisions under Idaho Code § 41-1836 about the

extent to which annuity payments which are "prospectively due" should

be exempt, after considering the "reasonable requirements" of the debtor

and his/her dependents.  Under this approach, the Court looks to the facts

as of petition day as a starting point, but should also take into account

anticipated changes and the debtor's reasonably foreseeable needs to occur

in the future.  While any prognostication is in some degree speculative, to

base the Court's decision solely on the debtor's petition date circumstances

with no regard given for likely future changes in the lives of the debtors

would deprive them of the protection intended by the statute.

There is evidence in this case to support the Court's decision:  Julie

---

[5]  The Court is aware that other courts have taken a different approach.
When considering an identical statute in Ohio, a bankruptcy court held that,
when calculating a debtor's rights to payments under a retirement annuity, the
court "must consider both the present and future needs of the debtors," and
therefore "'must look to the time when both husband and wife will be in
retirement[,]'" and "make its determination based on the facts existing on the
date the Debtors filed their petition."  *In re Guikema*, 329 B.R. 607, 619 (Bankr. S.D.
Ohio 2005) (quoting *In re Parker*, 219 B.R. 972, 974-75 (Bankr. S.D. Ohio 1998)
(internal citations omitted)).

MEMORANDUM OF DECISION – 18

testified that Debtors' income and expense schedules filed with their petition do not accurately reflect changes in their circumstances and their actual income and expenses as of the date of the exemption hearing. To accommodate this common scenario, the Court concludes it should analyze Debtors' need to exempt annuity payments in excess of $1,250 to be received in March 2014 based on the facts existing as of the petition date, but tempered by the current and the foreseeable anticipated "reasonable [financial] requirements" of Debtors and their dependents.

### 2. *Debtors' Need for Excess Benefits*

Julie testified concerning her family's current income and expenses, as compared to those reflected in Debtors' schedules filed with their bankruptcy petition in January, 2012. She also addressed Debtors' future anticipated income and expenses. A summation of her testimony shows:

| Schedule I – Income | | | | |
|---|---|---|---|---|
| Income Item | Petition Day | Current | Future | Change |
| Todd's Wages | $0 | $640 | $2,560[6] | +$1,920 |

---

[6] Exh. 206, 2004 Examination of Todd Baldwin 7-8.

MEMORANDUM OF DECISION – 19

| Total Income Change | | +$1,920 |
|---|---|---|

| Schedule J – Expenses | | | | |
|---|---|---|---|---|
| Income Item | Petition Day | Current | Future | Change |
| Mortgage/Rent | $2,011 | $900[7] | $900 | -$1,111 |
| Water/Sewer | $98 | $0 | $0 | -$98 |
| Telephone[8] | $40 | $180 | $180 | +$140 |
| Internet/Cable | $40 | $120 | $120 | +$80 |
| Home Maintenance | $100 | $0 | $0 | -$100 |
| Food | $800 | $850 | $850 | +$50 |
| Clothing | $100 | $150 | $150 | +$50 |
| Charitable Contrib.[9] | $650 | $650 | $450 | -$200 |
| Total Expense Change | | | | -$1,189 |

Analyzing this information, including anticipated changes

supported by the evidence, it appears that Debtors will have monthly

---

[7] Exh. 206, 2004 Examination of Todd Baldwin 10: 7-10; Exh. 207.

[8] Julie indicated that her initial Schedule J included only the cost of their land line, but not the family's cell phones.

[9] Debtors had been contributing $200 per month toward their daughter's church mission expenses. Julie testified that her daughter was to return home in October of this year.

MEMORANDUM OF DECISION – 20

income of $4,995[10] beginning in March 2013, and expenses of $4,803 as of

November 2012.  Because Debtors' income will likely exceed their

expenses by the time the non-guaranteed annuity payments begin in

March 2014, they have not demonstrated they qualify for an exemption of

monthly annuity payments in excess of the  $1,250 monthly statutory cap.

*Conclusion*

Debtors did not show that Julie is or was a dependent of her former

spouse, Mr. Johnson, and therefore, they can not exempt the annuity

payments under Idaho Code § 11-604(1)(c).  While Julie's future annuity

payments are exempt under Idaho Code § 41-1836, Debtors have not

shown they should be able to exempt amounts above the statutory cap of

$1,250 per month.

Trustee's objection to Debtors' exemption claim will be sustained in

---

[10]  The Court calculates Debtors' income as follows:  Julie's net income will
remain constant at $2,998.  Todd's income will rise to $2,560 in March 2013.
However, as Todd currently takes home approximately 78% of his gross pay
($500 take home from $640 gross pay), the Court concludes that he will continue
to take home approximately the same amount, as the health insurance is
deducted from Julie's paycheck.  Thus, $2,560 x .78= $1,996.80.

MEMORANDUM OF DECISION – 21

part, and denied in part.  A separate order will be entered.

Dated:  November 13, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 22